## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ESTATE OF VERONICA ESCOBAR, | : | |
| | : | Civil No.  3:22-CV-1666 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.    Introduction

This case is brought by the mother of a social security disability claimant, Veronica Escobar, who unfortunately passed away while her disability application was still being adjudicated. Following the death of her daughter, the plaintiff in this case, Luz Tellado, sought to substitute herself as a party to Ms. Escobar's disability application. A remand hearing was held after Ms. Escobar's death at which a medical expert testified. Following the hearing, the ALJ issued a notice of dismissal finding

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

1

only that Escobar's mother was not an appropriate substitute party under the Social Security regulations.

This appeal followed. On appeal, Tellado argues that the ALJ erred and abused his discretion in issuing a notice of dismissal in this case. However, the regulations are clear that the parent of an adult claimant is only an appropriate substitute party in a Title II application and applications under Title XVI are extinguished upon the death of an adult, unmarried claimant like Ms. Escobar. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

The claimant in this case, Veronica Escobar, filed an application for Title XVI Social Security Income benefits on January 26, 2017. (Tr. 98). She alleged she was disabled as of January 1, 2015, due to a heart defect of the left ventricle, aneurism, depression, anxiety, HBP, C-diff, anemia, hypertension, and bad circulation in the legs due to heart surgeries. (<u>Id.</u>) She was born on March 11, 1993, and was twenty-three years old at the time of her application. (<u>Id.</u>) She had a high school education which she completed in 2012. (Tr. 317). She was previously employed in 2015 and 2016 at a country club and Walmart. (<u>Id.</u>)

Escobar's claim was denied, and a hearing was held on November 9, 2018, after which an Administrative Law Judge (ALJ) issued an unfavorable decision. (Tr. 118-124). Escobar requested review by the Appeals Counsel on February 29, 2019, but it was not until fifteen months later, on June 24, 2020, that the Counsel ordered rehearing on the issue of Escobar's kidney disorder. (Tr. 128-31). Unfortunately, while awaiting a decision from the Appeals Counsel on her claim, Escobar died on February 21, 2020.[2] (Tr. 131). The Appeals Counsel held that the ALJ's decision had not considered whether Escobar had a severe impairment related to her kidneys and ordered the ALJ to obtain additional evidence from a medical expert addressing her impairments. The Appeals Counsel also acknowledged Escobar's death and ordered the ALJ to determine the appropriate substitute party and offer the substitute party, if any, an opportunity for a hearing. (Tr. 130-31).

On March 4, 2020, Escobar's mother, Luz Tellado, filed a notice of death and substitution of party notifying the Commissioner that she wished to be made a substitute party and proceed with the remand hearing. (Tr. 203). The hearing was held on August 4, 2021, at which Escobar's mother, a medical expert, and a vocational expert testified.[3] (Tr. 68-97). Following the hearing, the ALJ issued an

---

[2] The plaintiff notes that Escobar had filed a request for expedited decision based on her failing health on January 27, 2020. (Doc. 14).

[3] The hearing transcript refers to Escobar's mother as Ms. Valez.

3

order of dismissal. (Tr. 20-25). To comply with the remand order, the order of dismissal summarized the testimony of the medical expert but determined that it would not be necessary to review the testimony in detail and did not discuss Escobar's medical impairments beyond the summary of the expert testimony. The order of dismissal instead focused on the Appeals Counsel's mandate that the ALJ determine whether a substitute party existed. As the ALJ explained:

> In compliance with the remand order, the undersigned finds that there is no appropriate substitute party in this case. Subsequent to issuance of the undersigned's prior decision, claimant appealed and passed away. Pursuant to HALLEX I-3-4-4(C), the duty lay with the Appeals Council to determine whether there is an appropriate substitute party in this case. Nevertheless, the case was remanded. For the reasons identified below, there is no person or party who is qualified to continue the action in this case (20 CFR § 416.542(b)). The applicable CFR provision includes the following qualified substitute parties:
>
> • A surviving eligible spouse.
> • Any surviving spouse who was living in the same household as the deceased in the month he or she died or within 6 months immediately preceding the month of death.
> • The parents of the deceased, if the deceased was a disabled or blind child who was living with his or her parents at the time of death or within the 6 months immediately preceding the month of death.
> • The State, if the claimant was receiving interim assistance under an interim assistance reimbursement agreement.
>
> An Administrative Law Judge may dismiss a request for hearing on a Title XVI claim if the claimant dies while the request for hearing is pending, there are no other parties of record, there is no information to show that a survivor who may be paid benefits due to the claimant under 20 CFR 416.542(b) wishes to pursue the request for hearing, and the claimant did not authorize interim assistance reimbursement to the

State pursuant to section 1631(g) of the Social Security Act (20 CFR 416.1457(c)(4)).

As noted above, the claimant died on February 21, 2020. There are no other parties to this proceeding and there is no information showing that a survivor who may be paid benefits under 20 CFR 416.542(b) wishes to pursue the request for hearing. The claimant's mother is not considered an appropriate substitute party in this case. According to 20 CFR 416.542(b)(2):

"If the deceased underpaid recipient was a disabled or blind child when the underpayment occurred, the underpaid amount may be paid to the natural or adoptive parent(s) of the underpaid recipient who lived with the underpaid recipient in the month he or she died or within the 6 months preceding death. We consider the underpaid recipient to have been living with the natural or adoptive parent(s) in the period if the underpaid recipient satisfies the "living with" criteria we use when applying § 416.1165 or would have satisfied the criteria had his or her death not precluded the application of such criteria throughout a month."

As set forth in 20 CFR 416.1165: "If you are a child living with your parents, we apply the deeming rules to you through the month in which you reach age 18."

Therefore, while the claimant lived with her mother, she was not a child at any point in time during the period at issue. The claimant was born on March 11, 1993. The claimant was 21 years old on the alleged onset date, January 1, 2015, and 23 years old on the application date, January 26, 2017.

Finally, the record does not indicate that the claimant authorized interim assistance reimbursement to the State pursuant to section 1631(g) of the Social Security Act.

5

(Tr. 24-25). Having found that there was no appropriate substitute party in the case, the ALJ dismissed the request for a hearing dated September 15, 2017, and reinstated the July 25, 2017 determination denying the claim. (Id.)

This appeal followed. (Doc. 1). On appeal, the plaintiff, Escobar's mother, Luz Tellado, argues that the ALJ erred and abused his discretion in issuing the Notice of Dismissal. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

6

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

<u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

    The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see,</u>
> <u>e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v.</u>
> <u>Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. **Legal Benchmarks for the Substitution of Parties Following the Death of a Claimant**

The Social Security Administration maintains a Hearings, Appeals, and Litigation Law Manual (HALLEX) which contains policies and procedures for carrying out the Social Security regulations. With regard to the substitution of parties

in social security cases where the claimant dies during the proceedings, HALLEX I-2-1-50 explains that two different regulations define who is a qualified substitute party under Title II and Title XVI respectively.[4] As explained by the HALLEX:

> Under title II, if there is any person who qualifies as a substitute party under 20 CFR 404.503(b) and wishes to pursue the request for hearing, the ALJ will not dismiss the request for hearing because a substitute party is a person who may be adversely affected by a dismissal. See also Program Operations Manual System (POMS) GN 02301.030.

> Under title XVI, if there is any survivor who may be paid benefits under section 1631(b) of the Social Security Act (see also 20 CFR 416.542(b)) and who wishes to pursue the request for hearing, the ALJ will not dismiss the request for hearing because a qualified survivor is a person who may be adversely affected by a dismissal. See also POMS SI 02101.003.

HALLEX I-2-1-50.

Under this agency guidance, the applicable statute in determining a qualified substitute party for Title II claims is 20 CFR 404.503(b), which states:

> (b) Individual dies before adjustment of underpayment. If an individual who has been underpaid dies before receiving payment or negotiating a check or checks representing such payment, we first apply any amounts due the deceased individual against any overpayments as defined in § 404.501(a) owed by the deceased individual, unless we have waived recovery of such overpayment under the provisions of §§ 404.506 through 404.512. We then will distribute any remaining

---

[4] The regulations refer to "underpayment" which, as the Commissioner points out, has been considered synonymous with nonpayment for appeals purposes. See 20 C.F.R. §§ 416.536; Agie v. Sullivan, No. 89-0982, 1989 WL 281963, at *2 (W.D. Pa. Dec. 18, 1989).

underpayment to the living person (or persons) in the highest order of priority as follows:

(1) The deceased individual's surviving spouse as defined in section 216(c), (g), or (h) of the Act who was either:

(i) Living in the same household (as defined in § 404.347) with the deceased individual at the time of such individual's death, or

(ii) Entitled to a monthly benefit on the basis of the same earnings record as was the deceased individual for the month in which such individual died.

(2) The child or children of the deceased individual (as defined in section 216(e) or (h) of the Act) entitled to a monthly benefit on the basis of the same earnings record as was the deceased individual for the month in which such individual died (if more than one such child, in equal shares to each such child).

(3) The parent or parents of the deceased individual, entitled to a monthly benefit on the basis of the same earnings record as was the deceased individual for the month in which such individual died (if more than one such parent, in equal shares to each such parent). For this purpose, the definition of "parent" in § 404.374 includes the parent(s) of any deceased individual who was entitled to benefits under title II of the Act.

(4) The surviving spouse of the deceased individual (as defined in section 216(c), (g), or (h) of the Act) who does not qualify under paragraph (b)(1) of this section.

(5) The child or children of the deceased individual (as defined in section 216(e) or (h) of the Act) who do not qualify under paragraph (b)(2) of this section (if more than one such child, in equal shares to each such child).

(6) The parent or parents of the deceased individual, who do not qualify under paragraph (b)(3) of this section (if more than one such parent, in equal shares to each such parent). For this purpose, the definition of "parent" in § 404.374 includes the parent(s) of any deceased individual who was entitled to benefits under title II of the Act.

(7) The legal representative of the estate of the deceased individual as defined in paragraph (d) of this section.

20 C.F.R. § 404.503. Thus, Title II benefits can be paid to any of the delineated parties, including a deceased claimant's surviving spouse, children, or parents, in the priority order dictated by the statute. Therefore, in Title II cases where a deceased claimant has no spouse or children, the parents could be an appropriate substitute party.

Conversely, qualified substitute parties under Title XVI are dictated by section 1631(b) of the Social Security Act (20 CFR 416.542(b)), which states:

> (b) Underpaid recipient deceased—underpaid amount payable to survivor.
> (1) If a recipient dies before we have paid all benefits due or before the recipient endorses the check for the correct payment, we may pay the amount due to the deceased recipient's surviving eligible spouse or to his or her surviving spouse who was living with the underpaid recipient within the meaning of section 202(i) of the Act (see § 404.347) in the month he or she died or within 6 months immediately preceding the month of death.
> (2) If the deceased underpaid recipient was a disabled or blind child when the underpayment occurred, the underpaid amount may be paid to the natural or adoptive parent(s) of the underpaid recipient who lived with the underpaid recipient in the month he or she died or within the 6 months preceding death. We consider the underpaid recipient to have been living with the natural or adoptive parent(s) in the period if the underpaid recipient satisfies the "living with" criteria we use when applying § 416.1165 or would have satisfied the criteria had his or her death not precluded the application of such criteria throughout a month.
> (3) If the deceased individual was living with his or her spouse within the meaning of section 202(i) of the Act in the month of death or within 6 months immediately preceding the month of death, and was also living with his or her natural or adoptive parent(s) in the month of death or within 6 months preceding the month of death, we will pay the parent(s) any SSI underpayment due the deceased individual for

months he or she was a blind or disabled child and we will pay the spouse any SSI underpayment due the deceased individual for months he or she no longer met the definition of "child" as set forth at § 416.1856. If no parent(s) can be paid in such cases due to death or other reason, then we will pay the SSI underpayment due the deceased individual for months he or she was a blind or disabled child to the spouse.

(4) No benefits may be paid to the estate of any underpaid recipient, the estate of the surviving spouse, the estate of a parent, or to any survivor other than those listed in paragraph (b)(1) through (3) of this section. Payment of an underpaid amount to an ineligible spouse or surviving parent(s) may only be made for benefits payable for months after May 1986. Payment to surviving parent(s) may be made only for months of eligibility during which the deceased underpaid recipient was a child. We will not pay benefits to a survivor other than the eligible spouse who requests payment of an underpaid amount more than 24 months after the month of the individual's death.

20 C.F.R. § 416.542.

There is also a specific section of the Social Security Act relating to the underpayment of benefits under Title XVI which provides for the adjustment, recovery, or payment of underpayments broadly as follows:

(1)(A) Whenever the Commissioner of Social Security finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual or by recovery from such individual or his eligible spouse (or from the estate of either) or by payment to such individual or his eligible spouse, or, if such individual is deceased, by payment--
(i) to any surviving spouse of such individual, whether or not the individual's eligible spouse, if (within the meaning of the first sentence of section 402(i) of this title) such surviving husband or wife was living

13

in the same household with the individual at the time of his death or within the 6 months immediately preceding the month of such death, or (ii) if such individual was a disabled or blind child who was living with his parent or parents at the time of his death or within the 6 months immediately preceding the month of such death, to such parent or parents.

42 U.S.C.A. § 1383(b).

Thus, Title XVI claims may be paid to the surviving eligible spouse of a deceased claimant or the parents who had been living with the deceased claimant only if the deceased claimant was a disabled "child" when the underpayment occurred. With regard to what constitutes a "child" for purposes of the Act:

We consider you to be a child if—
(a)(1) You are under 18 years old; or
(2) You are under 22 years old and you are a student regularly attending school or college or training that is designed to prepare you for a paying job;
(b) You are not married; and
(c) You are not the head of a household.

20 C.F.R. § 416.1856

In sum, under Title II, a parent may be a substitute party for a deceased adult child if no other priority substitute party exists. However, a Title XVI claim extinguishes following the death of an adult, unmarried claimant. As one court has explained:

The Act expressly provides that if an individual dies before receiving a Title II underpayment of benefits to which she is entitled, such benefits

14

will be distributed to her survivors according to a statutorily established priority. 42 U.S.C. § 404(d); see also Perlow v. Comm'r of Soc. Sec., No. 10-cv-1661 (SLT), 2010 WL 4699871, at *1 (E.D.N.Y. Nov. 10, 2010) ("The Social Security Act expressly provides for Plaintiff's Social Security benefits to be paid to his survivors in the event he dies before collecting his underpayments.") (internal citation omitted). Under certain circumstances, such payments can be made to the parent of the deceased individual if there is no surviving spouse or a child left following the death of the deceased individual. 42 U.S.C. § 404(d)(3). Here, the claimant was not married and had no children at the time of her death. (Dkt. 11-2 at ¶ 3). She was survived by her father, Plaintiff in the instant action, who was substituted as party during the administrative proceedings and had been issued letters of administration by Niagara County Surrogate's Court to represent her estate. (Id. at ¶ 7; Dkt. 1-1 at 2; Dkt. 7-1 at 3; Dkt. 11-3). Therefore, the claimant's Title II claim survived her death.

The claimant has also filed an application for benefits under Title XVI of the Act, which, under the regulations, extinguishes when a deceased individual was an adult and had no surviving spouse at the time of her death. 20 C.F.R. § 416.542(b)(4). Because the claimant was not married at the time of her death, her Title XVI claim extinguished upon her death.

Joseph L. v. Comm'r of Soc. Sec., No. 1:22-CV-00033-UNA, 2023 WL 5344932, at

*1 (W.D.N.Y. Aug. 21, 2023).

Indeed, many other courts have also held that a claim for Supplemental

Security Income (SSI) under Title XVI extinguishes upon the death of the claimant

where the claimant had no surviving spouse. See Smith v. Califano, 597 F.2d 152

(9th Cir. 1979), cert. denied, 444 U.S. 980 (finding plain language of 42 U.S.C. §

1383(b) and its legislative history made clear that Congress did not intend that

commissioner make posthumous underpayments of Title XVI or SSI benefits to anyone except an eligible spouse); Agie v. Sullivan, No. 89-0982, 1989 WL 281963, at *1 (W.D. Pa. Dec. 18, 1989) (applying Smith v. Califano and holding underpayments under § 1383(b) can only be paid to the eligible applicant or spouse); Portland G. v. Comm'r of Soc. Sec., No. 1:20-CV-01035-EAW, 2023 WL 1097459, at *2 (W.D.N.Y. Jan. 30, 2023) ("[A] claim for benefits under Title XVI of the Act, [ ] extinguishes when a deceased individual does not have a surviving spouse at the time of her death"); Casares v. Kijakazi, No. 1:21-CV-1506-HBK, 2022 WL 891287, at *1 (E.D. Cal. Mar. 25, 2022) (dismissing Title XVI claim for supplemental security income where the claimant was unmarried and deceased); Fowler v. Astrue, No. 809-CV-1368T-27MAP, 2010 WL 454765, at *1 (M.D. Fla. Feb. 9, 2010) (limiting substitution by parents of claimant to review of DIB denial holding claim for Supplemental Security Income (SSI) extinguished upon son's death); Wasilauskis v. Astrue, No. CIV. 08-284BW, 2009 WL 861492, at *3 (D. Me. Mar. 30, 2009), report and recommendation adopted, No. CIV 08-284-B-W, 2009 WL 1078362 (D. Me. Apr. 21, 2009) (holding plaintiff did not meet statutory or regulatory criteria for entitlement of retroactive SSI benefits on account of her deceased son's claim because he was not a child as defined by the regulations during any time period for which he might have been eligible for SSI benefits); Motley ex.

16

rel. Motley v. Astrue, No. 06 Civ. 15269(RMB)(THK), 2008 WL 2755840, at *2 & n. 2 (S.D.N.Y. July 14, 2008) (holding that magistrate judge properly determined that SSI benefits were payable to deceased claimant's parent "only for months of eligibility during which the deceased underpaid recipient was a 'child,'" as defined by the Act); Torres v. Barnhart, 2002 WL 31932046 (S.D.N.Y. December 31, 2002) (dismissing plaintiff's claim for SSI benefits and denying motion for substitution because plaintiff was unmarried and had no surviving spouse).

## C. **The ALJ's Dismissal of This Case Will Be Affirmed.**

It is against this regulatory backdrop that we consider whether the ALJ in this case properly dismissed the claimant, Veronica Escobar's claim following her death despite her mother notifying the agency that she would like to be a substitute party to the claim. It is undisputed that the deceased claimant, Veronica Escobar, filed only an application for Title XVI benefits and was not a "child" within the meaning of 20 C.F.R. § 416.1856 at any time during the disability period. Indeed, Ms. Escobar was twenty-one years old on the date of her alleged onset of disability, (Tr. 98), and twenty-three on the date of her application. (Id.) Moreover, there is no evidence that Escobar was a student prior to turning twenty-two. Indeed, the record indicates she completed school in 2012. (Tr. 317).

To avoid the application of this straightforward rule that a parent is not a qualified substitute party for an adult's Title XVI claim, the plaintiff argues that the applicable statute, § 416.1856(b)(2) does not actually require that the claimant be a child as defined by the Social Security Act. The plaintiff argues:

> The language of the statute provides that it only is when the deceased claimant has been living with both his or her parents and spouse before death that the parents are paid benefits for months when the claimant was a "child" as defined by 20 U.S.C. §416.1856 and the spouse is paid any benefits for months the claimant no longer met the definition of "child" under 20 U.S.C. § 416.1856. 20 U.S.C. § 416.542(b)(2) does not provide that the term "child" in that Section must be as defined by 416.1856 when listing priority when the deceased claimant did not live with both a spouse and parent at the death of the claimant or within six (6) months of that claimant's death.

(Doc. 14, at 5). The plaintiff seemingly refers to the fact that 20 C.F.R. § 416.542(b)(3) specifically cites the regulation defining "child" while 416.542(b)(2) does not.

The plaintiff has cited no authority in support of her argument that the ALJ misinterpreted or failed to properly apply the regulations. Indeed, as previously discussed, an overwhelming judicial consensus supports the ALJ's interpretation of the regulations that Escobar, an adult, unmarried claimant's Title XVI claim extinguished upon her death. See Smith v. Califano, 597 F.2d 152 (9th Cir. 1979), cert. denied, 444 U.S. 980 (finding plain language of 42 U.S.C. § 1383(b) and its legislative history made clear that Congress did not intend that commissioner make

18

posthumous underpayments of Title XVI or SSI benefits to anyone except an eligible spouse); Agie v. Sullivan, No. 89-0982, 1989 WL 281963, at *1 (W.D. Pa. Dec. 18, 1989) (applying Smith v. Califano and holding underpayments under § 1383(b) can only be paid to the eligible applicant or spouse); Portland G. v. Comm'r of Soc. Sec., No. 1:20-CV-01035-EAW, 2023 WL 1097459, at *2 (W.D.N.Y. Jan. 30, 2023) ("[A] claim for benefits under Title XVI of the Act, [ ] extinguishes when a deceased individual does not have a surviving spouse at the time of her death"); Casares v. Kijakazi, No. 1:21-CV-1506-HBK, 2022 WL 891287, at *1 (E.D. Cal. Mar. 25, 2022) (dismissing Title XVI claim for supplemental security income where the claimant was unmarried and deceased); Fowler v. Astrue, No. 809-CV-1368T-27MAP, 2010 WL 454765, at *1 (M.D. Fla. Feb. 9, 2010) (limiting substitution by parents of claimant to review of DIB denial holding claim for Supplemental Security Income (SSI) extinguished upon son's death); Wasilauskis v. Astrue, No. CIV. 08-284BW, 2009 WL 861492, at *3 (D. Me. Mar. 30, 2009), report and recommendation adopted, No. CIV 08-284-B-W, 2009 WL 1078362 (D. Me. Apr. 21, 2009) (holding plaintiff did not meet statutory or regulatory criteria for entitlement of retroactive SSI benefits on account of her deceased son's claim because he was not a child as defined by the regulations during any time period for which he might have been eligible for SSI benefits); Motley ex. rel. Motley v.

19

Astrue, No. 06 Civ. 15269(RMB)(THK), 2008 WL 2755840, at *2 & n. 2 (S.D.N.Y. July 14, 2008) (holding that magistrate judge properly determined that SSI benefits were payable to deceased claimant's parent "only for months of eligibility during which the deceased underpaid recipient was a 'child,'" as defined by the Act); Torres v. Barnhart, 2002 WL 31932046 (S.D.N.Y. December 31, 2002) (dismissing plaintiff's claim for SSI benefits and denying motion for substitution because plaintiff was unmarried and had no surviving spouse).

Moreover, an ordinary reading of the statutory language supports this interpretation. The text of the regulation dictates first that all unpaid benefits under Title XVI be paid to the surviving spouse, then:

> If the deceased underpaid recipient was a disabled or blind child when the underpayment occurred, the underpaid amount may be paid to the natural or adoptive parent(s) of the underpaid recipient who lived with the underpaid recipient in the month he or she died or within the 6 months preceding death.

20 C.F.R. § 416.542(b)(2). Clearly the word "if" demonstrates that the deceased claimant must be a child, as in a minor child, and not just the spawn of his parents, for the parents to be appropriate substitute parties under this section. Indeed, the use of the word "if" in § 416.542(b)(2) contemplates circumstances in which the deceased claimant would not be considered a disabled or blind child, an

impossibility if referring only to whether the claimant was the colloquial "child" of his natural or adoptive parents.[5]

We are sensitive to the unfortunate circumstances presented by this case and acknowledge the equitable arguments made by the plaintiff that the significant delays in the resolution of Ms. Escobar's case resulted in her denial of benefits to which, during her lifetime, it could have been found she was entitled. However, the scope of our review in Social Security cases is limited and, here, we find no error in the ALJ's opinion dismissing this claim.

## IV.    Conclusion

Accordingly, for the foregoing reasons, the final decision of the Commissioner dismissing this claim will be AFFIRMED.

---

[5] Because our interpretation of this statute is not novel and is, indeed, consistent with the overwhelming weight of caselaw interpreting these regulations, we need not engage in a detailed statutory interpretation analysis. We do simply note that "[i]n determining whether language is unambiguous, we read the statute in its ordinary and natural sense. A provision is ambiguous only where the disputed language is reasonably susceptible of different interpretations." In re Philadelphia Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010), as amended (May 7, 2010). And "[w]hen the words of a statute are unambiguous, then . . . judicial inquiry is complete." Despite the plaintiff's argument to the contrary, the plain language of the statute clearly supports this interpretation.

An appropriate order follows.

_s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: November 5, 2024